Staples, J.,
delivered the opinion of the court.
This case is easily distinguishable from that of Bird’s committee v. Bird, 21 Gratt. 712. There the guardian had expended in the support and maintenance of his ward five hundred dollars in January 1865, and eight hundred dollars in March thereafter in confederate currency—thirteen hundred dollars in two months. Notwithstanding .the enormous depreciation of the *851 currency at that time, he claimed credit in his settlement for the full nominal amount of these expendítures. The guardian did not pretend that he had the ward’s money in making these disbursements, or that he had collected for that purpose debts due him individually in a sound currency. The fact was, that he had appropriated the money of the ward before the war, and he sought to discharge this liability with a worthless currency. The court was compelled to reduce that currency to its true value, or to allow a credit for the nominal amount expended. There was no middle ground, no materials for an adjustment of the guardian’s claims upon any basis of a just compensation. But in adopting the true value of the currency in that case, the court did not mean that this measure of recovery must be inflexibly adhered to under all circumstances. In the adjustment of these confederate transactions, to lay down fixed, unbending rules of decision, applicable to all cases, is not only unjust, but, in the nature of things, utterly impracticable. Every case must depend upon its particular circumstances. The measure of relief must of course vary according to the equities of the parties.
In the case before us, the appellant states, both in his answer and deposition, that the disbursements made by him as guardian, for the support and education of the ward, were derived partly from collections of ante-bellum debts due him individually, and partly from debts due the ward of the same character. He is unable to state the amount derived from each source in consequence of the loss of many of his books and papers by the great fire of Richmond in 1865. There is nothing in the record tending in the slightest degree to throw discredit upon these statements. They must therefore be taken as true.
*852 The circumstances under which the disbursements were made were of a peculiar character. It was understood that the appellee (female) would adopt teaching as her avocation. To that end, it was the earnest wish of her friends she should receive a liberal education. Her mother was so strongly impressed with this idea, that in her will she made it the subject of a special provision. She declared it to be her wish that her executor shall hold all funds and property which might belong to her daughter, and apply the interest towards her support and education; and she authorized him to-dispose of the principal of her estate for the same purpose according to his discretion. In accordance with the wishes of her family, and as it seems in pursuance of an arrangement made in the lifetime of her mother, the appellee, in the year 1860, was placed in the family of Mrs. "W. K. Gordon, to be educated with the daughters of the latter. At the suggestion of the appellee’s elder sister, she was afterwards sent to Miss Seaton’s school in Charlottesville. It is but just to say, that in consideration of the increasing expenses incident to the war, the appellant was of opinion, and suggested that his ward should be boarded with her relatives in the country until the return of peace, and then resume her studies. Her friends objected, however, that by this course the appellee would lose the most important period of her life for study, and for a thorough preparation for the occupation to which she was destined. She was accordingly sent to Charlottesville in the spring of 1862, where she remained two years. There is no doubt but that the education she received under the supervision of her guardian was sufficient for the duties of a teacher, and would have enabled her successfully to maintain herself in life, but for her subsequent marriage.
*853 In 1860 and 1861, the appellee’s expenses for tuition ■and board while at Mrs. Gordon’s, amounted to two hun•dred and seven dollars; which was paid by the appellant as guardian. The payment was made by a check upon the bank in which the appellant kept his deposits. Although the check was probably paid in confederate notes, there is no doubt but the deposits were made in a sound currency, and the payee of the check might legally have demanded payment in the like medium. It is now insisted that this sum thus expended shall be scaled, so as to reduce the charge to the sum of one hundred and fifty dollars. In the year 1862 the appellant paid Miss Seaton about four hundred dollars for the board and tuition of the year; a sum perhaps less than is now required in any desirable female school in Virginia. It is insisted that this sum shall also be scaled to two hundred and fifty dollars. In the year 1863 the appellant expended in board and tuition about seven hundred and forty dollars; which it is insisted shall be reduced by the application of the scale to the sum of ninety dollars. According to this rule the appellee will have received a four years instruction at a cost of about five hundred dollars; and at a loss to her guardian of more than eight.hundred dollars. And this loss the appellees are disposed to impose upon the guardian without the slightest scruple; notwithstanding the instruction she received was in accordance with the wishes of her mother and the rest of her family, and was regarded by all as absolutely essential to her future success as a teacher, and her position in society. I think the conduct of the guardian under all the cir-cumstances was eminently proper and considerate. He cannot, it is true, be repaid the nominal amount (dollar for dollar) of his disbursements', because neither the interest nor the principal of the personal estate *854 justified such an expenditure. He is certainly entitled to be repaid such sum as would constitute a reasonable outlay in tbe education- and maintenance off the ward.
The commissioner to whom the accounts were referred for settlement, has adopted the true measure of the guardian’s compensation. In his report he states:
It will be seen by comparing the account, as first stated, with the alternate statement made at request of plaintiff’s counsel, that your commissioner did not scale the payment, of $207, made by the guardian to Mrs. Gordon, for the ward’s board, &e., in 1861, which charge was upon a specie basis; hence its payment ought not, in the opinion of your commissioner, to be scaled. But as to the payments to Miss Seaton for the-board and tuition of the ward for the years 1862 and'-1863, which were in excess of the ante-war charges,, your commissioner, thought it just to both parties to reduce these amounts to what was reasonable compensation, and hence fixed the amount at $350 for each year. But had your comm’r scaled the payments down to their greenback values, as is done in the alternate-statement, the ward would have greatly profited by the loss and injury of the guardian. She would only have been charged $235 for the year 1862, and the small sum of $95 for 1863: As this balance in the hands of the guardian was held for the very purpose, as set forth in the will of Mrs. Mary B. Bothrock (the mother), of' educating the ward, there is no impropriety in her being charged a reasonable amount for board and tuition,, when she actually enjoyed the same and received the benefits. The guardian in his answer declares that the money paid by him cost him dollar for dollar; and from all the evidence in the case it does not appear-that it was the purpose of tbe guardian to take any ad *855 vantage of the ward, or that he profited by speculating upon the money in his hands. Under the above state of facts, your commissioner thinks he did right charge the ward with a reasonable yearly board, and not to reduce the payments made by her guardian for such below that sum by scaling them to greenbacks or gold.
It may be that in allowing the credits claimed by the appellant the ■principal of the ward’s personal estate will be absorbed. So far as the property derived from the mother is concerned, the appellant was authorized by the will to dispose of it at his discretion in educating the ward. But without this, if the disburse- . ments of the guardian are such as the court would have authorized had the application been previously made, they will be allowed, although made without authority. Had the guardian in the year 1860 applied to a court of chancery for authority to expend $350 in the education of the ward, there is no doubt it would have been given. Such an expenditure would then have been regarded as eminently proper and judicious. The court is as competent to allow it now as then.
I think the appellant is entitled to a decree in conformity with the views of the commissioner already adverted to. There is the greater satisfaction in arriving at this conclusion, because it is shown by this record that the action of the guardian met with the unqualified approval of the husband of the ward. On two occasions the expenditures of the appellant were fully disclosed to him. He was informed of the circumstances under which they were made, and of the extent and nature of the credits claimed. He not only made no objection, but he expressed his entire satisfaction with the accounts. It was not until after the institution of the present suit that the application of the *856 scale to all the disbursements iu confederate currency was so strongly insisted upon by the appellee. ■
Upon the whole, I think the decree of the circuit eourj; mu8t be reversed, and the cause remanded for farther proceedings in conformity with the views herein , expressed.
The decree was as follows:
The court is of opinion, for reasons stated in writing and filed with the record, that the appellant in the settlement of his accounts as guardian ought to be allowed such sum or sums as under the circumstances would constitute a just and proper expenditure for the education and maintenance of the female appellee; and to this end he is entitled to a credit for the sum of two hundred and seven dollars, paid in the year 1862, on account of the board of the said female appellee in the years 1860 and 1861; and he is entitled to a further credit of three hundred and fifty dollars for each of the years 1862 and 1863, on account of payments made during the same period for the education and board of the female appellee; and the circuit court therefore erred in holding that all confederate items of payments or receipts, in the account of the appellant as guardian, should be scaled to their true value. Therefore for the error aforesaid, it is decreed and ordered that the decree of the said circuit court be reversed and annulled, and'that the appellant recover against the appellees his costs by him expended in the prosecution of his appeal aforesaid here; and the cause is remanded to the said circuit court for further proceedings to be had therein in accordance with the principles of this decree.
Which is ordered to be certified to the said circuit court of Fauquier county.
Decree reversed.